## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LESZEK PAWELKOWSKI,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-cv-1445-RJD** |
| **T. FITZGERALD, DEE DEE BROOKHART, JOHN/JANE DOE #1 GRIEVANCE OFFICER, CARISSA LUKING, NURSE PRACTITIONER WISE, LORI CUNNINGHAM, WEXFORD HEALTH SOURCES, INC., and LAWRENCE CORRECTIONAL CENTER ADMINISTRATION,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**DALY, Magistrate Judge:**

Plaintiff Leszek Pawelkowski, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Danville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Pawelkowski alleges that he has experienced a language barrier which limits his ability to file grievances and obtain medical care while at Lawrence Correctional Center.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

1

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

<u>**The Complaint**</u>

In his Complaint, Plaintiff makes the following allegations: Plaintiff is Polish and does not understand, speak, read, or write English well (Doc. 1, p. 10). His language limitations are well known to IDOC officials. Plaintiff alleges that Lawrence Correctional Center officials have refused him access to interpretation services, despite the prison having language interpretation procedures (*Id.* at pp. 10-11). Plaintiff alleges he was unable to pursue remedies through the prison's administrative process because he did not understand the grievance process and his grievances were rejected because they were filed in his native language. He also alleges that this action violated his due process rights as he was unable to adequately utilize the grievance process (*Id.* at p. 14). Plaintiff wrote 44 grievances, but officials refused to translate the grievances and ignored his concerns (*Id.* at p. 15). An additional 11 grievances were translated but his grievances still were ignored by officials, or the responses were delayed (*Id.*).

Plaintiff also alleges that he is unable to receive translation services when he seeks medical care at the prison. When he is sent outside of the prison for outside care, the hospital finds him a Polish speaking translator, but the prison refuses to provide him with a translator despite documented language barriers (*Id.* at p. 16). Plaintiff alleges that "Wexford staff" are deliberately indifferent to his medical needs due to the language

barrier (*Id*.). He alleges that Lorie Cunningham documented the prison's knowledge of Plaintiff's language barriers in a grievance response (*Id*. at p. 11).

Plaintiff submitted numerous grievances to counselor T. Fitzgerald in Polish (*Id*. at p. 17). But each time, Fitzgerald merely responded that he was unable to translate (*Id*.). Even for the grievances that were translated, Fitzgerald still responded that the grievances were written in a language that the officer was unable to translate (*Id*.). Plaintiff contends that the grievances were translated after the grievance officials noted that the grievances were indecipherable. He alleges the grievance officers either ignored the grievances or returned them because they were written in Polish (*Id*. at pp. 22-23). When Plaintiff sent grievances to the Administrative Review Board ("ARB"), the grievances were returned with a note that the prison has the ability to translate and should address the grievances first (*Id*. at pp. 18, 23). Plaintiff alleges that grievance officials had the ability to translate the grievances because two of the grievances in his file have an appropriate response, indicating that someone was able to translate his complaints (*Id*. at p. 24).

Plaintiff notes that he has another case pending in this district and has received assigned counsel. Counsel requires a translator to communicate with Plaintiff and has made attempts to schedule a phone conference with Plaintiff and a translator (*Id*.). Former Warden Dee Dee Brookhart refused to allow the phone conferences, thus interfering with Plaintiff's due process rights and the right to an interpreter (*Id*. at p. 19). Plaintiff alleges that his counsel had to file numerous motions to continue with the court due to delays caused by Brookhart (*Id*.). Plaintiff filed grievances about this issue, but the grievance

3

officer noted that he was able to communicate with Plaintiff in English and offered to write Plaintiff's grievance complaints down for him (*Id.* at p. 20). Plaintiff contends that this claim was not accurate.

Plaintiff also alleges that as a result of his language barrier, medical staff have been deliberately indifferent to his medical needs. He alleges that medical staff at Lawrence refuse to interpret his medical needs and his requests for care (Doc. 1, p. 25). Staff are unable to translate the state of his care and future needs to him (*Id.*). Plaintiff states that his requests for treatment have been ignored and that the denial of care has gone on for years, indicating a pattern or practice of denying care. He submitted numerous request forms to Nurse Practitioner Carissa Luking and Plaintiff alleges that these requests were ignored (*Id.* at p. 27). All of the requests were written in Polish and were documented by staff at the prison in his medical file (*Id.* at p. 28). He also submitted numerous requests to Nurse Practitioner Wise in 2023 that Plaintiff alleges were ignored due to the language barrier (*Id.* at p. 27).

On May 8, 2024, Plaintiff went to an outside hospital to see a specialist (*Id.* at p. 28). The specialist called a translator in order to communicate to Plaintiff his diagnosis and treatment plan (*Id.*). Plaintiff informed the specialist that Lawrence refused to use a translator service to communicate with Plaintiff (*Id.*). Plaintiff notes that he has been prescribed numerous medications, but he does not know the purpose of those medications or the need for those prescriptions due to language barriers (*Id.* at p. 29). Nor has staff provided him with instructions on when and how to take the medication (*Id.*). On March 20, 2024, Plaintiff saw a specialist for neck and back issues (*Id.* at p. 29). That

specialist also contacted a translator by phone and communicated to Plaintiff that he would be provided with physical therapy instructions and exercises by prison staff (*Id.* at pp. 29-30). Plaintiff communicated his concerns that staff at the prison would not provide translated instructions. Correctional Officer Ackman, who attended the appointment with Plaintiff, indicated that he would tell Nurse Practitioner Luking and staff that Plaintiff needed translated instructions (*Id.* at p. 30). Plaintiff acknowledges that Ackman did speak with Luking about his needs. But Plaintiff never received any exercise instructions. After filing a grievance, he did receive partially translated instructions of exercises but was only able to read about 2/3 of the instructions (*Id.*).

## **Preliminary Dismissals**

Although Plaintiff lists Lawrence Correctional Center Administration as a defendant, he fails to identify any specific official that he alleges violated his rights. He refers to numerous grievance officials and other officials who failed to respond to his grievances, but he fails to identify those individuals by John Doe designation. He also refers to the "Lawrence Medical Unit", "Wexford Staff", and "Wexford and IDOC Medical Administration" but fails to identify the specific medical professionals who provided him with care. Although Plaintiff may certainly allege claims against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), he refers only to administration, officials, staff, and officers, and does not identify a specific staff member. To the extent that he alleges any claim against the "administration", those individuals in administrative positions cannot be liable for the actions of staff because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v.*

*Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Officials can only be liable for their personal involvement in Plaintiff's care. Thus, Plaintiff fails to state a claim against Lawrence Correctional Center Administration.

Plaintiff also lists a number of grievance officials including Counselor T. Fitzgerald and a John Doe Administrative Grievance Officer who he alleges improperly rejected his grievances without translating them into English. Plaintiff alleges that their failure to translate and respond to his grievances amounted to a due process violation. But there is no due process right implicated by the prison grievance process. *See, e.g.*, *Courtney v. Devore*, 595 F. App'x 618, 620–21 (7th Cir. 2014) ("[S]tate grievance procedures do not create substantive liberty interests protected by due process."); *Owens v. Hinsley*, 635 F.3d 950, 953–54 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause...."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, Plaintiff's claim against Fitzgerald and the John/Jane Doe Grievance Officer, as well as any due process claim for Plaintiff's issues with the grievance process, are **DISMISSED without prejudice**.

Plaintiff also alleges that Dee Dee Brookhart interfered with his access to courts when she denied and delayed his phone calls with his attorney and interpreter. Inmates have a "constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). To state a claim for denial of access to the courts, a plaintiff must demonstrate that the "defendants' conduct prejudice[d] a potentially meritorious challenge to the

prisoner's conviction, sentence, or conditions of confinement." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). *See also Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). The "complaint should state the underlying claim [that was lost] in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 417 (2002). Although Plaintiff alleges that Brookhart delayed calls with his attorney, he acknowledges that his counsel was able to obtain extensions in his case. Thus, he fails to allege that he lost an underlying claim as a result of Brookhart's actions. Any claim against Brookhart is, accordingly, **DISMISSED without prejudice**.

Plaintiff also fails to state a claim against Wexford Health Sources, Inc. Wexford can only be liable for deliberate indifference if it had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). But Plaintiff merely alleges that staff and Wexford administration have a history of unconstitutional practices, pointing to numerous cases indicating "a pattern of unconstitutional behavior" (Doc. 1, p. 26). He fails, however, to allege that Wexford had a policy or practice of refusing to provide care to individuals with language barriers. Instead, he merely alleges that staff refused to interpret his requests and failed to explain his care or arriethat staff at the prison failed to help him. Without more, Plaintiff fails to state a claim against Wexford.

Finally, Plaintiff fails to state a claim against Lorie Cunningham. Although he alleges that Cunningham responded to a grievance and documented his language barrier,

there are no allegations to suggest that she provided him with care or acted with deliberate indifference towards his need for care. He merely notes that Lori Cunningham was the healthcare unit director during the relevant time period (Doc. 1, p. 27). He notes that he submitted a request to her on March 2, 2023, but fails to indicate the nature of the request, the care he sought, and Cunningham's response, if any (*Id*. at p. 28). Plaintiff notes that the request was in his native Polish and it is not clear what care he sought from Cunningham (*Id*; Doc. 1-4, p. 56). Thus, there are no allegations suggesting that Cunningham acted with deliberate indifference and any claim against her is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following count:

**Count 1:**    **Eighth Amendment deliberate indifference claim against Carissa Luking and Nurse Practitioner Wise for denying and delaying medical care to Plaintiff.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

At this stage, Plaintiff states a viable deliberate indifference claim against Carissa Luking. Plaintiff alleges that Luking has ignored his medical requests because they are in Polish. Luking also failed to provide Plaintiff with proper physical therapy instructions or prescription instructions in Plaintiff's language. Luking's failure to translate Plaintiff's concerns and/or translate a diagnosis and treatment to Plaintiff can rise to the level of deliberate indifference. *See Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983) ("An impenetrable language barrier between doctor and patient can readily lead to misdiagnoses and therefore unnecessary pain and suffering."). Thus, Count 1 shall proceed against Luking.

Plaintiff also adequately states a claim against Nurse Practitioner Wise. He alleges that he submitted numerous requests to her that were also ignored. Plaintiff includes a number of those requests in his exhibits (Doc. 1-4). Some of the requests are in English, requesting care for pain in his back and legs (Doc. 1-4, pp. 47-52). But Plaintiff alleges that all of his requests to Wise were ignored. Thus, Count 1 shall also proceed against Wise.

## **Motion for Counsel**

In addition to his Complaint, Plaintiff submitted a motion for counsel (Doc. 3). He notes that he wrote several attorneys who refused to take his case and he cannot pay for an attorney. He also notes that he does not speak, write, or read English well because his native language is Polish. But given the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the

plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Defendants have not yet been served nor has an Answer been filed. Once all defendants have filed Answers, and the Court has entered a scheduling order setting forth the next steps in the litigation process, Plaintiff can renew his request for counsel. At this time, his request for counsel (Doc. 3) is **DENIED without prejudice**.

<u>Disposition</u>

For the reasons stated above, Count 1 shall proceed against Carissa Luking and Nurse Practitioner Wise. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Carissa Luking and Nurse Practitioner Wise: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Plaintiff's claims involve his medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result

11

in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 13, 2025.**

*/s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**